## PennDOT v. Dixon

*Charles McCardle, Office of Chief Counsel,* for the Commonwealth.

*Steven Kip Portman,* for defendant.

BIEHN, *J.*, February 25, 1991 — The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing has appealed to Commonwealth Court from our order of December 20, 1990 sustaining the appeal of Lawrence Dixon.

Appellee's driver's license was suspended due to his refusal to take a breathalyzer test. It is not disputed that he refused the test. The sole issue before this court was whether or not the police officer had reasonable grounds to request that appellee submit to a chemical test as required by 75 Pa.C.S. §1547. We found that he did not.

The law in this area is clear that "reasonable grounds" must be decided on a case-by-case basis.

"We have held that an arresting officer has reasonable grounds to believe that a motorist is operating a vehicle under the influence of alcohol if a reasonable person in the officer's position, viewing the facts and circumstances as they appear to the officer at the time, could have reached such a conclusion. *Department of Transportation, Bureau of Driver Licensing v. Terreri,* 114 Pa. Commw. 208, 538 A.2d 639 (1988). We defined reasonable grounds as follows in *Department of Transportation, Bureau of Traffic Safety v. Dreisbach,* 26 Pa. Commw. 201, 204-5, 363 A.2d 870, 872 (1976):

" 'Whether evidence is sufficient to constitute "reasonable grounds" can only be decided on a case-by-case basis. The test, however, is not very demanding. We note initially that, for "reasonable grounds" to exist, the police officer obviously need not be correct in his belief that the motorist had been driving while intoxicated. We are dealing here with the authority to request a person to submit to a chemical test and not with the admission into evidence of the result of such a test. The only valid inquiry on this issue at the de novo hearing is

whether, viewing the facts and circumstances as they appeared at the time, a reasonable person in the position of the police officer could have concluded that the motorist was operating the vehicle and under the influence of intoxicating liquor.'" *Polinsky v. Commonwealth, Department of Transportation,* 131 Pa. Commw. 83, 85-6, 569 A.2d 425, 426 (1990). (footnotes omitted)

At the hearing held before this court, Officer George Nevel testified that he was dispatched to the scene of an automobile accident on September 7, 1990, where he came into contact with appellee. The officer stated that appellee was seated behind the steering wheel of his vehicle and that appellee and the driver of the other car involved in the accident were beginning to exchange information. The officer also testified that it was the other driver who informed him that "he [the other driver] felt [appellee] may have been intoxicated." (Notes of Testimony 12/19/90, at 4.)

The officer stated that appellee's eyes were blood-shot so he asked appellee to exit his vehicle and perform a few field sobriety tests. The officer then stated the following:

"A: It was the nine step heel-to-toe walk and turn [appellee] performed. He couldn't walk heel-to-toe. He walked heel to instep and almost fell one time.

"After that I asked him to do the one-leg stand to a count of 30, and demonstrated this to him. He began. He could only count up to 17, and then he put his foot down.

"And also he held his foot up not straight out in front of him, but like a crane bent. He bent at the knee." (N.T. 12/19/90, at 4.)

On cross-examination, however, Officer Nevel was unclear as to whether he or the other driver smelled the odor of alcohol about appellee:

"Q: Officer Nevel, you first became suspicious of [appellee] being under the influence from [the other driver] telling you [appellee] smelled of alcohol?

"A: Yes.

"Q: And I note from your testimony on direct that you didn't smell an odor of alcoholic beverages about [appellee], did you?

"A: I don't recall smelling it. In my report it states that there was, but I can't recall.

"Q: Do you recall testifying at the preliminary hearing in this matter?

"A: Yes, I do. I recall not testifying to that.

"Q: You recall not saying that you smelled the odor of alcoholic beverage there?

"A: No, I didn't say anything about that in my testimony at the preliminary. It was in my report as I stated. However, I passed over that while testifying at the preliminary hearing.

"The Court: But you were told by the other party in the accident that he had smelled an odor of alcoholic beverages?

"The Witness: No, he just told me that he believed that the operator was intoxicated.

"The Court: Didn't give any other reason?

"The Witness: No.

. . .

"Q: Since you recall that part of [the other driver's] testimony at the preliminary hearing, you recall that he also testified to some extent that there was an odor. He thought it was alcohol, but he really wasn't sure what that was? It was just a strange odor?

"A: I don't know if they were his exact words but yes, kind of something like that." (N.T. 12/19/90, at 5-7.)

This court is aware that the presence or absence of the odor of alcohol about a motorist is not the

only test of whether an officer had reasonable grounds to believe a driver was under the influence of alcohol. However, we believe it is a factor we must consider. So too did we consider that the field sobriety tests were performed on the shoulder of the road where, by the officer's testimony, it was not smooth but consisted of stones and rocks and where traffic was heavy at the time. The officer also agreed that appellee was cooperative at the scene. It was the officer's opinion that appellee failed the field sobriety tests that caused the officer to arrest appellee for driving under the influence.

This court attempted to clarify the officer's observations:

"The Court: You talked to [the other driver] who said what in terms of the defendant's intoxication? This may be important. What was it exactly that he said to the best of your recollect[ion]?

"The Witness: Just that he didn't seem right, [appellee] didn't seem right, and that he thinks he may be intoxicated. Not word for word, but to that point.

"And when I walked up to the vehicle that he was sitting behind the wheel, I walked up to his driver's door, his eyes were red and bloodshot, and he was sitting there writing his information down." (N.T. 12/19/90, at 8-9.)

We believe it is the driver's behavior and appearance, as observed by the arresting officer, which must be considered. In the instant case, Officer Nevel observed only that appellee had bloodshot eyes and partially completed the field sobriety tests. There was no evidence of slurred speech or an unsteady gait. Furthermore, the testimony concerning the odor of alcohol was inconclusive. In addition, the officer testified that appellee was cooperative and was exchanging information with the other

driver. Viewing the above facts and circumstances, we found that a reasonable person in the position of the police officer could not have concluded that appellee was under the influence of alcohol.

Accordingly, we reversed the order of the Department of Transportation.